ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION



| | | |
|---|---|---|
| PULIO ALEXANDER DIAZ-MORALES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 309-083 |
| | ) | |
| WALT WELLS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate currently incarcerated at McRae Correctional Facility ("MCF") in McRae, Georgia, commenced the above-captioned petition under 28 U.S.C. § 2241 contesting, among other things, the execution of his sentence of confinement. Respondent has filed his response to the petition, (doc. no. 7), and Petitioner, in turn, filed a response (doc. no. 9).[1] For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

I. BACKGROUND

A. Procedural Background

Petitioner is serving an aggregate 135 month sentence for interference with commerce by threats or violence and use and possession of a firearm during a crime of violence. (Doc.

---

[1] Respondent went on to file a reply to Petitioner's response (doc. no. 10), to which Petitioner filed yet another response (doc. no. 11).

no. 7, pp. 1-2 & Ex. 1.) He is scheduled for release on November 30, 2014, via good conduct time credit. (Id.) Petitioner filed this § 2241 petition contending that he has impermissibly been deprived of twenty-seven (27) days of good conduct time ("GCT"), after being found guilty by a disciplinary hearing officer ("DHO") of participating in a group demonstration that consisted of boycotting three specific meals served at MCF, in violation of prison regulations. (See generally doc. no. 1.)

Petitioner claims in his petition that the disciplinary procedures to which he was subjected violated due process. (See id. at 12, 23-28.) Petitioner also attempts to assert various causes of action under the Religious Freedom Restoration Act, the Religious Land Use and Institutionalized Person's Act, the Equal Protection Clause of the Fourteenth Amendment, the Free Exercise Clause and the Establishment Clause of the First Amendment, and the Eighth Amendment (See id. at 12.) Petitioner also asserts a claim of selective prosecution. (Id.) As relief, Petitioner requests restoration of the 27 days of GCT or, in alternative, an evidentiary hearing for any matter that this Court deems requires such a hearing. (Id. at 28.)

The Court directed service to be effected on Respondent and instructed Respondent to show cause why Petitioner's writ should not be granted by filing a response within 20 days of the date of service. (Doc. no. 3.) Respondent contends that Petitioner was afforded due process with respect to his disciplinary hearing and that his claim under the Equal Protection Clause is without merit; Respondent also contends that Petitioner failed to exhaust all remaining claims. (See generally doc. no. 7.)

2

### B. Disciplinary Charges and Proceedings

Respondent provides that on January 28 and 29, 2009, staff at McRae became aware of what they believed to be an inmate food boycott, which involved a group of inmates refusing to eat the provided religious diet meals. (Doc. no. 7, Ex. 4, ¶ 5.) Respondent further provides that the suspected boycott was identified as specifically targeting the evening meal served on January 28, 2009, and the morning and noon meals served on January 29, 2009. (Id.) According to Respondent, an initial investigation into the suspected food boycott identified Petitioner as a possible participant since he did not receive the meals that were identified as the target of the suspected boycott. (Id. ¶ 6.)

Accordingly, on January 29, 2009, Petitioner was placed in the Special Housing Unit pending an investigation of his participation in the suspected boycott. (Id. ¶ 7.) Respondent maintains that an incident report was prepared on January 29, 2009, but that the investigation into Petitioner's incident report was suspended pending the results of an investigation by the institution's Special Investigation Services ("SIS").[2] (Id. ¶¶ 8-9.) Respondent further states that the SIS investigation of 119 alleged inmate participants was finalized by Respondent on February 23, 2009. (Id. ¶ 9.) On February 26, 2009, the suspension of Petitioner's incident report was lifted, and the investigation of his incident report commenced. (Id., Ex. 5, § 22.) On that same date an investigator assigned to Petitioner's case advised Petitioner of his right to remain silent at all stages of the disciplinary process. (Id. § 23.) The investigator then proceeded to question Petitioner about his involvement in the suspected boycott. (Id. § 24.)

---

[2]Petitioner received a copy of the incident report on January 30, 2009. (Doc. no. 7, Ex. 4, ¶ 8.)

3

Respondent provides that although Petitioner stated that he did not eat in the mornings and was not involved in the boycott, the investigator concluded, based on the report from the reporting staff member, that there was sufficient evidence to continue processing the incident report and forwarded the report to the Unit Disciplinary Committee ("UDC") for a hearing. (Id. §§ 24, 26-27.)

Petitioner was then charged with Engaging in a Group Demonstration in violation of Code 212 of the disciplinary regulations. (Id. § 26.) The UDC held a hearing on March 4, 2009, at which Petitioner appeared and provided a statement maintaining that he did not participate in a Group Demonstration, that he never goes to breakfast, and that he went into the "chow area" at lunch but came back out because he did not see anyone there. (Id. §§ 17, 21.) Due to the nature of the allegation against Petitioner, the UDC made no decision and referred the matter for a hearing by a DHO. (Id. § 19.)

On March 4, 2009, the UDC also provided Petitioner with notice of his rights before the DHO, including his right to call witnesses, to present evidence, and to request assistance from a staff representative. (Id., Ex. 7.) Petitioner chose to exercise his rights, and at the hearing on April 16, 2009, Petitioner, as well as Petitioner's staff representative, provided statements on his behalf. (Id., Ex.9, §§ I(B), II(E) & III.)

On April 17, 2009, the DHO issued his written decision. (Id. § IX.) In making his decision, Respondent explains that the DHO considered the meal monitoring records from MCF, the January 29th interview questionnaire, and a memorandum from the Assistant Chief of Security. (Id. § III(D).) According to the DHO's report, the meal monitoring records indicated that Petitioner regularly received his noon and evening meals during the period

4

leading up to the food boycott, but that he did not receive the meals identified as part of the group demonstration.³ (Id. § V.) Furthermore, the DHO noted that when asked by his Unit Manager why he participated in the group demonstration, he responded, "Different menu; too much change." (Id.) When the Unit Manager asked Petitioner if he voluntarily engaged in a demonstration that threate[ed] the safety as well as the overall security of [MCF]," Petitioner replied, "It's voluntary."⁴ (Id.) In addition, the memorandum written by the Assistant Security Chief indicated that he monitored the serving of the Kosher meal at noon on January 29th and that he observed only one inmate participate in the meal (who was not Petitioner).⁵ (Id.)

---

³Respondent clarified that the Meal Monitoring Review Records not only consist of results of the scanned inmate identification cards before each meal, but also include the observations of an officer who personally observed which inmates received their meals and ate them or received their meals and threw them away. According to Respondent, a review of Petitioner's Meal Monitoring Review Records indicated that an officer observed Petitioner scan the card at the January 28th breakfast and dinner meals, but that he ultimately discarded the food tray. (Doc. no. 10, p. 5 and Ex. 15.) Importantly, nowhere does Petitioner claim that he ate any of the meals that were the target of the Group Demonstration. Rather, Petitioner argues that the Meal Monitoring Review Records would show that contrary to Respondent's representation, Petitioner did not regularly receive several of his lunch meals. (See, e.g., doc. no. 9, p. 5.) Equally noteworthy is Petitioner's argument that the Assistant Security Chief was mistaken in his observation that only one inmate who received the Kosher diet participated in the noon January 29, 2009 meal. (Id. at 5.) As evidence that the Assistant Security Chief was mistaken, Petitioner alleges that inmate " Herman Delgado" ate the January 29th noon meal. (Id. at 6.) However, nowhere does Petitioner argue that _he_ participated in that meal.

⁴Petitioner indicated to the DHO that because of his lack of English proficiency he did not understand what his Unit Manager was saying to him during the interview conducted on January 29, 2009. (Doc. no. 7, Ex. 9, § V.) When asked by the DHO why Petitioner did not ask for a translator, he replied that he did not know why, and that he answered the questions as best as he could. (Id.)

⁵This one inmate did not receive an incident report. (Doc. no. 7, Ex. 9, § V.)

Based on this evidence, the DHO found Petitioner guilty of participating in the Group Demonstration and sanctioned him with a loss of 27 days of GCT. (Id. §§ V-VI.) The DHO explained that he had imposed this sanction because such behavior "threatens the safety of all inmates as well as the overall security of the facility. In the past, group demonstrations have led to ser[i]ous damage to facilities as well as ser[i]ous injury to staff and inmates alike, to both people involved and people not involved in the demonstration." (Id. § VII.) With these facts in mind, the Court turns to the merits of the claims raised in the § 2241 petition.

## II. DISCUSSION

### A. Due Process Claim

Petitioner claims that his due process rights were violated during the course of the events described. In particular, he asserts that the DHO's adverse decision, which resulted in the loss of 27 days of GCT, violated his constitutional due process rights. (See generally doc. no. 1.) On the other hand, Respondent contends that Petitioner received all the rights to which he was entitled, and therefore, he fails to provide a basis for relief. (See doc. no. 7, pp. 11-14.) Respondent has the better argument.

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. However, a prisoner facing a disciplinary hearing is still entitled to compliance with the following minimum due process protections: (1) written notice of the charges against him at least 24 hours before his hearing; (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call

witnesses and present documentary evidence in his defense. Id. at 563-67; see also Asad v. Crosby, 158 F. App'x 166, 172-73 (11th Cir. 2005); Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

In addition to these procedural due process requirements, the Supreme Court has explained that the degree of proof required at a prison disciplinary hearing to satisfy due process is significantly lower than that required in a criminal prosecution. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court concluded that a finding that "some evidence" supports the decision of a prison disciplinary board is enough to satisfy the minimum due process requirements for prisoners facing loss of GCT:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. [103,] 106 . . . [(1927)]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455-56. The Eleventh Circuit has further explained the limited judicial review that federal courts may undertake in reference to prison disciplinary actions:

> The federal courts cannot assume the task of retrying all prison disciplinary disputes. No de novo review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by "some facts"--"whether any evidence at all" supports the action taken by prison officials.

Young v. Jones, 37 F.3d 1457, 1460 (11th Cir. 1994) (quoting Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981)).

Here, the Court concludes that the procedural due process requirements were met

7

with respect to Petitioner's disciplinary hearing and that "some evidence" supports the DHO's decision. Indeed, as noted above, on January 30, 2009, Petitioner was provided with a copy of the incident report notifying him of the charges against him and on February 26, he was advised of his rights. (Doc. no. 7, Ex. 4, ¶ 8 & Ex. 5 § 23.) On March 4, 2009, the UDC referred the matter to the DHO for a hearing. (Id., Ex. 5 § 19, 21 & 27.) Petitioner was also advised of the rights afforded to him at his disciplinary hearing, which included, among other things, his rights to have a staff representative provide a statement on his behalf and present evidence. (Id., Ex. 7.) Indeed, as noted in the DHO Report, Petitioner chose to exercise these rights; he was represented by a staff representative who made a statement on his behalf. (Id., Ex. 9, § II(E).) After Petitioner exercised his rights at the disciplinary hearing, the DHO issued a detailed report explaining the evidence upon which he relied in reaching his decision, as well as his reasons for sanctioning Petitioner with a loss of 27 days of GCT. (Id. §§ V, VII.) The DHO Report indicates that a copy was delivered to Petitioner on May 23, 2009, and Petitioner does not contest that he received this report. (Id. § IX.) Finally, the Court finds that the decision of the DHO is supported by "some evidence." Indeed, Petitioner's own statements to the DHO, as well as the meal monitoring data and memorandum from Assistant Chief of Security, demonstrate that Petitioner did not eat the meals that were identified as the target of the Group Demonstration. Accordingly, the Court finds that Petitioner's claim that he was deprived of due process and is entitled to restoration of 27 days of GCT is without merit and fails to provide a basis for relief.

To the extent Petitioner argues that the disciplinary procedures violated his due process rights because he was denied the opportunity to present documentary evidence when

his request for the meal monitoring data was rejected, his argument fails. First, Petitioner was notified that if he wanted those documents, he could file a request pursuant to the Freedom of Information Act ("FOIA"). (Doc. no. 10, Ex. 13.) Respondent notes that as of the date of his reply brief, Petitioner had not filed a FOIA request for this information. (Id. at 2) Thus, Petitioner has not been denied access to the documents. Rather he chose not to avail himself of the procedure required to obtain the documents. Additionally, to the extent Petitioner sought documents pertaining to other inmates, Respondent maintains that BOP policy does not allow Petitioner to have access to other inmates' disciplinary matters. (Id. (citing Ex. 14).)

Furthermore, to the extent Petitioner argues that the documents should have been provided to him pursuant to Brady v. Maryland, 373 U.S. 83 (1963), this argument also fails. (See doc. no. 9, pp. 8-11.) Petitioner relies on Brady for the proposition that he is entitled to exculpatory evidence from Respondent, but notably, Brady is a criminal case.[6] As previously mentioned, the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. Indeed, the Eleventh Circuit noted, without deciding the issue, that it has never held that the principles of Brady extend to prison disciplinary hearings. Kenney v. Barron, 239 F. App'x 494, 495 (11th Cir. 2007) (*per curiam*). Finally, although Petitioner claims that the meal monitoring data would somehow show that he did not participate in the Group Demonstration, this argument is unavailing

---

[6]The Brady court held that the defendant's due process rights were violated because he was entitled to exculpatory evidence that had been suppressed by the government. Brady, 373 U.S. at 87.

9

because Petitioner has acknowledged that he did not participate in the meals (doc. no. 7, Ex. 5, § 17 & Ex. 9, § V).

Accordingly, the Court finds that Petitioner's claim that he was deprived of due process and is entitled to restoration of 27 days of GCT is without merit and fails to provide a basis for relief.

### B. Remaining Claims

As noted above, Petitioner also attempts to assert various causes of action under the Religious Freedom Restoration Act, the Religious Land Use and Institutionalized Person's Act, the Equal Protection Clause of the Fourteenth Amendment, the Free Exercise Clause and the Establishment Clause of the First Amendment, and the Eight Amendment (See doc. no. 1, p. 12.) Petitioner also asserts a claim of selective prosecution. (Id.) Petitioner's arguments concerning these claims are: 1) that the Bureau of Prisons should provide Kosher meals; and 2) that he was treated differently from other inmates who also did not eat the targeted meals in that he was sanctioned and others were not. (Id. at 16, 19 & 22.) However, these claims are not appropriate in this § 2241 petition. Indeed, the sole function of habeas corpus "is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose." Cook v. Hanberry, 592 F.2d 248, 249 (5th Cir. 1979), revised by 596 F.2d 658 (5th Cir. 1979).[7] "Habeas corpus is not available to prisoners complaining only of mistreatment during their legal incarceration." Id.

Here, however, the factual allegations raised in the remaining claims listed above

---

[7]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

challenge the conditions, rather than the fact or duration, of Petitioner's confinement. Such allegations may be appropriate in a civil rights complaint, but do not state cognizable grounds for relief in a § 2241 petition.[8] Accordingly, Petitioner's remaining claims should be dismissed for failure to allege grounds on which § 2241 relief may be granted.

That said, at least as to Petitioner's equal protection claim, the Court recognizes that other courts have allowed federal prisoners to bring similar claims in § 2241 petitions. See, e.g., United States v. Tamayo, 162 F. App'x 813, 815 (10th Cir. 2006) (considering alien's "equal protection" challenge to "execution" of his sentence under § 2241). However, even if Petitioner's equal protection claim were appropriate in this § 2241 petition, this claim fails on the merits. In order to state a viable equal protection claim, a prisoner must allege: (1) that he has been treated differently from other "similarly situated" inmates, and (2) that this discriminatory treatment is based upon a constitutionally impermissible basis, such as race. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (*per curiam*).

Petitioner argues that he was treated differently from other inmates who also did not eat the targeted meals, but were not sanctioned as a result. This included other inmates who regularly ate kosher meals. (Doc. no. 1, p. 19) However, Petitioner fails to establish that he was punished based on a constitutionally impermissible basis. It appears that Petitioner attempts to argue that he was punished based on religion, but his argument falls short. Petitioner argues that punishment was aimed at Muslims because they make up the majority

---

[8]Even if Petitioner had filed a civil rights complaint under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), he still might not be entitled to relief in federal court. See Alba v. Montford, 517 F.3d 1249, 1254 (11th Cir. 2008) (holding that prisoners in a private federal facility are not entitled to Bivens relief when adequate state remedies are available).

of those who eat kosher meals. (Id. at 21.) However, Petitioner does not allege that those who were punished were Muslims and those who were not punished were not Muslims. Furthermore, Petitioner does not assert that he, as an individual, was singled out and punished due to being a Muslim. In fact, Petitioner does not state anywhere in his complaint that he is a Muslim.[9] Therefore, even if Petitioner's equal protection claim were appropriate in this § 2241 petition, his claim fails on the merits.[10]

Even if Petitioner were allowed to proceed with his remaining claims, they would be barred due to Petitioner's failure to satisfy the exhaustion requirement. See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 92 (2006); Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004) (*per curiam*); Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992) (*per curiam*). Moreover, mere perceived futility of exhaustion does not excuse a prisoner from pursuing administrative relief before filing a civil complaint in federal court. E.g., Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*) (stating that "the exhaustion requirement [in a prisoner civil rights case] cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile"); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994) (recognizing exhaustion requirement in relation to bringing § 2241 petition and noting any exception to exhaustion would apply only in "extraordinary circumstances"); cf. Jaimes v. United States, 168 F. App'x 356, 359 (11th Cir. 2006) (*per*

---

[9]Petitioner references his "faith" and "beliefs," but never establishes what his faith or beliefs are. (See doc. no. 1, pp. 16-17.)

[10]A claim of selective prosecution is based upon a violation of the Equal Protection Clause, see Wayte v. United States, 470 U.S. 598, 608 (1985); therefore, Petitioner's claim of selective prosecution would fail on the merits due to his inability to establish an equal protection claim.

12

*curiam*) (observing that whether habeas petitioner "may even assert a futility exception to the [exhaustion] requirement is questionable"). Here, Petitioner's grievance record reflects that he did not exhaust his administrative remedies concerning the above-stated claims. (Doc. no. 7, p 4 & Ex. 3.) In fact, Petitioner freely admits that he has not exhausted his administrative remedies regarding the above-stated claims. (Doc. no. 9, p. 2.) Thus, even if Petitioner had brought the instant claims in a civil rights complaint or if his claims were cognizable under § 2241, he would not be entitled to relief because of his failure to exhaust his administrative remedies.

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 20th day of January, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE